

Lorinda Youngcourt
Ryan Farrell
Justin Lonergan
Federal Defenders of Eastern Washington and Idaho
601 West Riverside Ave, Suite 900
Spokane, Washington 99201
509.624.7606
Attorneys for Manuel Villalobos, III

# United States District Court
## District of Idaho

| | |
|---|---|
| United States,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Manuel Phillip Villalobos, III,<br><br>　　　　　　　Defendant. | No. 3:19-cr-40-DCN-1<br><br>Motion to Dismiss and Objection to Proposed Change to Involuntary Medication Regimen<br><br><br>*Sell* Hearing Requested |

I. SUMMARY

The Bureau of Prisons has unreasonably delayed its second attempt at restoring Mr. Villalobos' competency to stand trial. Tragically, Mr. Villalobos' case is merely another example of the Bureau of Prisons' chronic, systemic failure to provide restoration treatment. Given the circumstances of the case as informed by that broader context, the Bureau of Prisons' handling of Mr. Villalobos amounts to a violation of Mr. Villalobos' 5th Amendment due process rights, justifying immediate dismissal with prejudice.

Relatedly, Mr. Villalobos objects to the Bureau of Prisons' proposed change to his involuntary medication regimen. Dkt. No. 138. The Bureau of Prisons' request fails to provide a clear and convincing basis to override Mr. Villalobos' important liberty interests which are impacted by an involuntary *Sell* order.

On both issues, counsel requests a factfinding hearing at which the Court can hear evidence not only in opposition to a modified *Sell* order, but also as to why dismissal is necessary at this juncture of the case.[1]

---

[1] Mr. Villalobos' immediate release may also be an appropriate lesser remedy, depending on the testimony elicited at a hearing. *See e.g. U.S. v. Lara*, 671 F.Supp.3d 1257 (D. N.M. 2023).

## II. Background

Counsel offers the following summary of key events since August of 2023 (with additional earlier events discussed within argument):

- August 25, 2023 – defense counsel moves the Court to find that Mr. Villalobos is not competent to stand trial. Dkt. No. 123. This is, as all parties are aware, the second occasion to evaluate Mr. Villalobos' competence (*see* Dkt. No. 40).

- September 13, 2023 – the Court enters an order directing a competency evaluation. Dkt. No. 125. The Court directs Mr. Villalobos' transfer to the Attorney General for the evaluation. *Id*. The Court's order establishes a thirty-day deadline for the United States to conduct the evaluation. *Id*.

- October 5, 2023 – The Court extends the observation deadline to November 17, 2023. Dkt. No. 127.

- November 17, 2023 – The Bureau of Prisons' deadline expires with no communication or update from the evaluating psychologist, Dr. Nybo. *Id*.

- November 30, 2023 – Mr. Villalobos files an *ex parte* document captioned as a motion for a "writ of habeas corpus." Dkt. No. 128.

- December 6, 2023 – Chambers reaches out to Dr. Nybo, given the Bureau of Prisons failed to meet the Court's deadline. Dr. Nybo responds via email and

claims he completed the evaluation "prior to the expiration of the study period." *See* Exhibit A.  Dr. Nybo indicates he hopes to finish the report by "early January."

- January 8, 2024 – Months after the Court's *November* deadline, Dr. Nybo issues a report (Dkt. No. 130) recommending transfer to a federal medical center for attempts at restoration.

- January 12, 2024 – The Court enters order finding "that the defendant, Manuel Villalobos, is incompetent to stand trial at the present time." Dkt. No. 131.  The Court commits Mr. Villalobos "to the custody of the Attorney General for a period not to exceed 4 months for the purpose of undergoing restorative treatment pursuant to 18 U.S.C. § 4241." *Id*.

- January 18, 2024 – Counsel for Mr. Villalobos contacts chambers to ensure the necessary parties are aware of the requirement to transport Mr. Villalobos, given the "lengthy delay in transport" when the Court issued its first restoration order. *See* Exhibit B.

- March 8, 2024 – Counsel for Mr. Villalobos contacts chambers to advise that "Mr. Villalobos remains at SeaTac[.]" *See* Exhibit C.  Counsel requests the Court obtain an update from the Bureau of Prisons on their "timeline." *See id*.

- April 12, 2024 – Counsel for Mr. Villalobos again advises that Mr. Villalobos has yet to be transported. *See* Exhibit D. Chambers confirms that it has "not been able to get any information as to why he has not been moved." *See id.*

- April 18, 2024 – The Bureau of Prisons, under letterhead of Federal Medical Center Butner, sends counsel a comprehensive records and information request. *See Exhibit E.* The letter comes even while Mr. Villalobos is still detained at Seatac.

- April 23, 2024 – Mr. Villalobos finally arrives to FMC Butner, over one hundred days after the Court's restoration order. Dkt. No. 138, pg. 2.

- June 6, 2024 – Dr. Du Bois provides a status report requesting the Court authorize changes to the existing *Sell* order. *Id.*

### III. Law

It is a central tenet of the American criminal legal system that a person may be prosecuted only if he is competent to stand trial. *Dusky v. U.S.*, 362 U.S. 402 (1960). Although an incompetent defendant may not stand trial, he also may not be confined for an indefinite period simply because he is incompetent. *Jackson v. Indiana*, 406 U.S. at 720. The "nature and duration of commitment" must be reasonably related to the purpose of commitment. *Id.* at 738. Therefore, an incompetent criminal defendant "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain capacity in the foreseeable future." *Id.* Moreover, "because incapacitated criminal defendants have

not been convicted of any crime, they have an interest in freedom from incarceration…
[and] a liberty interest in receiving restorative treatment." *Or. Advocacy Ctr. v. Mink*,
322 F.3d 1101, 1121 (9th Cir. 2003).

Federal law protects these important constitutional rights in the Insanity Defense Reform Act (IDRA). 18 U.S.C. §4241(d) states:

> If…the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

§ 4241(d), (d)(1).

The IDRA provides a clear temporal limit: "not to exceed four months[.]" *Id*. This unambiguous limitation attempts to effect constitutional bounds on the reasonableness of pretrial confinement. *Jackson*, 406 U.S. at 738. The statute is also

Motion to Dismiss and Objection
– 5 –

1   crystal clear that only the judiciary – *not the Bureau of Prisons* – has the authority to

2   entertain a possible extension of the four-month limitation. 18 U.S.C. §4241(d)(2)(A).

3   Further, a court's discretion to extend the restoration period requires a predicate

4   finding that "there is a substantial probability that within such additional person of

5   time [the defendant] will attain the capacity to permit the proceedings to go

6   forward[.]" *Id*.

7       Although the Attorney General may be allowed a brief period of transportation

8   delay for §4241 proceedings, the delay shall not exceed the four-month window that is

9   similarly provided for restoration treatment. *U.S. v. Donnelly*, 41 F.4th 1102, 1106 (9th

10  Cir. 2022). In *Donnelly*, the Ninth Circuit criticized a pre-hospitalization delay of eight

11  months. The court held that transportation delay is subject to the reasonableness

12  requirement outlined by the Supreme Court in *Jackson*. The court underscored the

13  Attorney General's basic initial task, i.e., "simply to identify an appropriate treatment

14  facility and arrange for the defendant′s transportation to that facility." *Id*. at 1106.

15  Although the court stopped short of dismissal under the facts before it, the court

16  specifically acknowledged that such a drastic sanction was conceivable. The court

17  opined, "[w]e note in closing that nothing in our decision today forecloses the

18  possibility that dismissal may become appropriate at a future date, either in this case or

19  in others like it." *Id*. at 1107. *See also U.S. v. Leusogi*, 2022 WL 16855426, at \*2 (D.

Utah 2022) (dismissing indictment due to transportation delays)

Motion to Dismiss and Objection
– 6 –

Dismissal is evaluated under the Court's supervisory powers. *Id.*; *see also Donnelly*, 41 F.4th at 1107. Under those discretionary powers, the factors include: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Leusogi*, 2022 WL 16855426, at *2. (*citing Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992).

## IV.  The Court Must Dismiss

*Donnelly* left open the possibility that a delay *shorter* than four months may still violate IDRA. 41 F.4th. at 1107. This case proves the premonition. It took the Attorney General over 100 days to accomplish the simple task of moving Mr. Villalobos. Each of the *Ehrenhaus* factors weighs toward dismissal as the only appropriate remedy. *Leusogi*, 2022 WL 16855426, at *2.

First, "actual prejudice occurs when the error of which [the defendant] complains is an 'error of constitutional dimensions' that 'worked to [the defendant's] actual and substantial disadvantage.' " *Id.,* (*citing U.S v. Snyder*, 871 F.3d 1122, 1128 (9th Cir. 2017)) (*quoting U.S. v. Frady*, 456 U.S. 152, 170 (1982)). An unreasonable period of confinement implicates Mr. Villalobos' right to due process and is thus an error of constitutional dimensions. Among other rights, the delay impacts Mr. Villalobos' right to be free of indefinite detention, as discussed under *Jackson*.

Moreover, this is the Court's second finding of incompetency for Mr. Villalobos and nothing in the psychological record suggests that restoration treatment has a substantial probability of restoring competency. 18 U.S.C. §4141(d)(2). Thus, the indefinite nature of this confinement coupled with the unreasonable time periods of the confinement have resulted in actual prejudice to Mr. Villalobos.

Second, the amount of interference with the judicial process is substantial. Mr. Villalobos was arrested on February 7, 2019, and has been confined without trial since that date. Because the IDRA requires restoration of a non-competent criminal defendant, the proceedings may not move forward until such restoration is achieved. 18 U.S.C. § 4241(d). Competence and restoration proceedings, have contributed substantially to pretrial delay, have had a significant stagnating effect on development of the case, and have ultimately frustrated the judicial process.

Relatedly, it is solely the government's (through the Bureau of Prisons) culpability that is relevant here and which has been the predominant factor in the overall delay in the competency resolution. Just as the court in *Leusogi* found that the government's failure to comply with the order to transfer the defendant to a suitable restoration facility within a reasonable time weighed in favor of dismissal, so too does the government's delay in this case weigh toward dismissal. 2022 WL 16855426, at *3. As would established at a hearing, there is no legitimate administrative or classification justification behind a 100-plus day delay. Indeed, this Court could not, despite

diligence from chambers, get even as much as a courtesy update from the Bureau of Prisons as to why Mr. Villalobos' transportation was taking so long. Moreover, the government's culpability is heightened because this is the *second* time the Bureau of Prisons has been unable to do such a basic task as moving a defendant.

Fourth, the government has been on notice that dismissal is a possibility where its agents are unable to accomplish the basic task of transportation. This is the second time Mr. Villalobos is being put through the competency restoration treatment process. The cumulative restoration time is far beyond the any period the government can reasonably justify.[2] Although the court has not explicitly issued a prior warning, the *Donnelly* admonitions and district court progeny have amply notified the government that it will be held to account. 41 F.4th at 1108 (advising that criminal defendants "may be able to show that the government's unreasonable delay amounts to the kind of flagrant misconduct warranting dismissal").

Relatedly, the only appropriate remedy is dismissal of the indictment. It is critical to note that only four months before the Court's September competence order, the Department of Justice made the following promise:

---

[2] This factor interrelates with the second and third *Sell* factors, and is therefore appropriately developed through a hearing.

– 9 –

> "The [Bureau of Prisons] will take *decisive action* to reduce the wait time for competency restoration among federal defendants to include use of innovative strategies[.]"

See *Report of the Attorney General Pursuant to Section 16(b)(ii) of Executive Order 14074: Department of Justice Planned Steps to Address Conditions of Confinement in Federal Detention Facilities*, May 2023, pg. 7 (emphasis added).

That promise clearly meant little in practice, and the Court need not excuse continued stalling by the Bureau of Prisons. Six months past the Court's January 12, 2024, order committing Mr. Villalobos for competency restoration, the Bureau has yet to take "decisive action" or to even proffer that it expects to make meaningful progress toward restoration. Dkt. No. 138.

In sum, the delay in this case – stretching back to the Bureau's handling of Mr. Villalobos' first competency determination – is well beyond *Donnelly*'s reasonableness standard. As such, the Court must conclude that Mr. Villalobos' Due Process rights have been violated and that dismissal is the only appropriate remedy.

V. **IF THE COURT DOES NOT DISMISS, IT MUST HOLD A SECOND *SELL* HEARING**

"[U]nder *Sell*, the government cannot involuntarily medicate a mentally ill defendant for the purpose of rendering him competent to stand trial unless it proves (1) "that *important* governmental interests are at stake;" (2) "that involuntary medication

will *significantly further* those concomitant state interests;" (3) "that involuntary medication is *necessary* to further those interests;" and (4) "that administration of the drugs is *medically appropriate*." *U.S. v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010) (emphases in original). "The *Sell* factors do not represent a balancing test, but a set of independent requirements, each of which must be found to be true before the forcible administration of psychotropic drugs may be considered constitutionally permissible." *Id., citing U.S. v. Hernandez–Vasquez*, 513 F.3d 908, 913 (9th Cir.2008). The United States must prove the relevant facts by clear and convincing evidence. *Id*.

Regarding the first factor, the calculus of the government's interests has changed since the original *Sell* hearing. Most significantly, Mr. Villalobos has remained in custody. *See id*. ("The long duration of Ruiz's current confinement, which would be credited towards any sentence ultimately imposed, weakens the government's interest in prosecution"). This factor therefore weighs against modification.

The Bureau of Prisons has likewise not established the second *Sell* factor. FMC Butner has yet to even acknowledge, no less address, Dr. Franklin's report that questioned whether Mr. Villalobos had in fact been actually restored during the first competency round. Moreover, Drs. Du Bois and Graddy ask the Court to modify an order based on an as-yet-to-occur hypothetical situation. In other words, the Court has no basis on which to conclude there is an "abiding conviction" that the proposed

change will have the necessary outcome to justify the intrusion. *See OTR Wheel Engineering v. West Worldwide*, 897 F.3d 1008, 1020 (9th Cir. 2018).

Third, substantial doubt exists on the record that the proposed changes are either necessary or medically appropriate. *Ruiz-Gaxiola*, 623 F.3d at 691. Several factual issues immediately jump out:

- The two BoP reports on file raise the issue of whether the BoP's own modification of Mr. Villalobos' dosage and type of risperidone may in fact be part of the problem. As described in Dr. Nybo's competency report, a Bureau of Prisons contract medical provider *doubled* Mr. Villalobos' medication when performing the competency evaluation. Dkt. No. 130, pgs. 5 and 6. The Bureau nonetheless concluded that this greater dosage (i.e., 6 mg) was insufficient, as implied by the restoration recommendation. *Id*. Yet, the Butner staff subsequently, and without explanation, *halved* Mr. Villalobos' dosage (i.e., to 3 mg). A hearing is therefore necessary to develop the accuracy and reliability of FMC Butner's *Sell* recommendations to the Court. Dkt. No. 138.

- On the face of their report, Drs. Du Bois' and Graddy's insinuation of medication rejection are purely speculative. They offer no observed medication rejection, only a generic statement that Mr. Villalobos refuses to have his blood drawn. *Id*. Perhaps Mr. Villalobos is just frustrated at

Motion to Dismiss and Objection
– 12 –

- how the government is treating him. A mere hypothesis is not clear and convincing evidence.

- Relatedly, Dr. Franklin memorialized that "Bonner County jail medical records […] *show adherence* to 3 mg daily of risperidone since it was prescribed on 9/20/22." Dkt. No. 123-1, pg. 4. Dr. Nybo likewise observed no evidence of medication rejection. Dkt. No. 130.

- Lastly, the defense proffers that a *Sell* hearing is necessary to present potential expert testimony regarding the potential adverse impact of haloperidol on certain population groups, e.g., those of Native American decent. Given the short timeline involved in filing this objection, counsel has not had adequate opportunity to fully consult with appropriate experts to give the Court a more specific proffer.

In sum, each of the *Sell* factors is at issue. At present, the Court lacks sufficient information to enter factual findings, particularly to *Sell*'s clear and convincing standard. Further, additional expert testimony may be presented to rebut FMC Butner's status report. Accordingly, the Court must order a hearing.

## VI. Conclusion

We should not lose sight of an important point: Mr. Villalobos did not ask for the Bureau of Prisons to treat him. Instead, the government wants to bring him to trial on charges for which he is presumed innocent. Be that as it may, restoration is the

Motion to Dismiss and Objection
– 13 –

government's hill to climb.  In light of the government's unreasonable delay in attempting restoration that has operated to Mr. Villalobos' prejudice, the Court should dismiss the indictment.  Should the Court not dismiss the indictment outright, the Court should order a *Sell* hearing before allowing the United States to engage in the intrusive step of forced medication.

Dated: June 11, 2024.

        Federal Defenders of Eastern Washington & Idaho
        Attorneys for Defendant Manuel Villalobos
        <u>s/Justin Lonergan</u>

        Justin P. Lonergan, ISB No. 11161
        601 West Riverside Ave., Suite 900
        Spokane, Washington 99201
        t: (509) 624-7606
        f: (509) 747-3539
        Justin_Lonergan@fd.org

### Service Certificate

I certify that on June 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Bryce Ellsworth and Dave Robins.

<u>s/Justin Lonergan</u>
Justin P. Lonergan, ISB No. 11161
601 West Riverside Ave., Suite 900
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Justin_Lonergan@fd.org