UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MANUEL PHILLIP VILLALOBOS,<br><br>    Defendant. | Case No. 3:19-cr-00040-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION AND BACKGROUND

In the fall of 2020, the Court found that the Defendant, Manuel Phillip Villalobos, III, was not competent to stand trial (Dkt. 51) and committed him to the custody of the Attorney General for the purpose of undergoing restorative treatment pursuant to 18 U.S.C. § 4241 (Dkt. 52).

On September 20, 2021, the Court was advised by letter from the Federal Medical Center in Butner, North Carolina ("FMC Butner"), that although psychiatric professionals had determined Villalobos could be restored to competency through the administration of anti-psychotic medication, he refused to voluntarily accept such medication. Based on Villalobos's refusal to voluntarily receive treatment, the Government requested that the Court conduct a *Sell* hearing to determine if the Court should compel the administration of such medication.

On January 7, 2022, the Court conducted a *Sell* hearing, heard testimony from

MEMORANDUM DECISION AND ORDER - 1

numerous witnesses, and ultimately granted the Government's Motion to involuntarily medicate Villalobos. Dkt. 74.

After a period of restorative treatment, Villalobos was brought back to Idaho where, on September 21, 2022, the Court found him Competent to stand trial. Dkt. 85. The case then progressed towards trial.

However, shortly before trial, Defense Counsel again became concerned with Villalobos's competency. Dkts. 119–122. Once again, the Court ordered a Competency Evaluation. Dkt. 125.

Based upon that evaluation, on January 12, 2024, the Court found Villalobos incompetent and sent him back to FMC Butner for restorative treatment. Dkt. 131.

On June 4, 2024, the Court received a status report from FMC Butner via email. Dkt. 138. Therein, Dr. Du Bois requested that the Court modify its prior *Sell* order to allow for a slightly new regime of treatment. The Court emailed counsel its intent to approve the request absent an objection. Villalobos noted his objection. The Court and counsel determined a *Sell* hearing was the best way to address the situation and a hearing was scheduled. Dkt. 144.

At that hearing, Villalobos was present and represented by counsel. The Court heard testimony from two doctors at FMC Butner and Villalobos himself. At the conclusion of the hearing, the Court ruled that its prior *Sell* order could be modified consistent with Dr. Du Bois's request. Dkt. 147. This decision memorializes that oral ruling.

## II. LEGAL STANDARD

Determining whether the Government can involuntarily administer drugs to a

prisoner is something that is not done lightly and a ruling in favor of involuntary medication "may be rare." *Sell v. United States*, 539 U.S. 166, 180 (2003). The Supreme Court has "recognized that an individual has a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Id*. at 178 (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990) (cleaned up)).

The test created by the Supreme Court has four requirements to guide the Court in its determination of whether to permit "involuntary administration of drugs solely for trial competence purposes." *Sell*, 539 U.S. at 180. Those requirements are: (1) "that *important* governmental interests are at stake;" (2) "that involuntary medication will *significantly further* those concomitant state interests;" (3) "that involuntary medication is *necessary* to further those interests;" and (4) "that administration of the drugs is *medically appropriate*." *Id*. at 180–81 (emphasis in original).

The burden is on the Government to show "a need for that treatment" that is "sufficiently important to overcome the individual's protected interest in refusing it." *Id.* at 183.

### III. DISCUSSION

As the Court noted at oral argument, it is not entirely clear a *Sell* hearing was required in this instance. The Court has already made the requisite findings relative to involuntarily medicating Villalobos. Following a two and a half hour hearing, the Court issued a detailed 28-page order evaluating all of the *Sell* factors. *See generally* Dkt. 74.[1]

---

[1] Notably, the Court outlined certain minor changes that would be allowed under its order depending on Villalobos's compliance and/or the effectiveness of the medication. Dkt. 74, at 27–28; 27 n.7.

The Court, however, felt the best avenue to allow the parties to argue the current issue was through another hearing that largely resembled a *Sell* hearing.

That said, the Court saw no reason to revisit its prior determination or restate its prior findings. The Court's analysis and conclusion in its original *Sell* order is still applicable at this stage of the case. The issue currently before the Court does not relate to an entirely new *Sell* order or a drastic change to Villalobos's treatment plan. The request from staff at FMC Butner is—for the most part—to change the methodology in which Villalobos's medication is administered. *See generally* Dkt. 138.

At the hearing, both Dr. Graddy and Dr. Du Bois testified that Villalobos does not appear to be progressing in his treatment. This could be the result of two things: first, Villalobos is not actually taking (e.g. ingestion) the medication when administered but is surreptitiously discarding it; second, the medication in its current form/dosage is simply not working.

Villalobos vehemently denies the assertion that he isn't taking the medications as prescribed. The Court would note that Villalobos has refused lab testing to confirm what medications, if any, are in his system. But, the Court need not make a concrete finding on whether or not Villalobos is actually digesting his medications because *even assuming he is*, the medications are not working according to the testimony of the medical staff. Said another way, if Villalobos is not digesting his medications, that would likely explain his stalled progression. But even if he is digesting the medications, those medications in those doses are not working so a change is in order to determine whether he can be restored to competency sufficient to stand trial.

MEMORANDUM DECISION AND ORDER - 4

Based upon the testimony and argument at the hearing, the Court finds that the Government has met its burden to show there is a "need" for a change in treatment that is "sufficiently important to overcome [Villalobos's objection]." *Sell*, 539 U.S. at 183.

## IV. ORDER

Consistent with its oral ruling on July 19, 2024, that FMC Butner can make a change to Villalobos's current regime of treatment (Dkt. 147), the Court GRANTS the request and modifies the prior *Sell* order (Dkt. 74) as follows:

> FMC Butner shall administer haloperidol decanoate 25mg by intramuscular injection every two weeks. Prior to regular administration of haloperidol decanoate 25mg by intramuscular injection every two weeks, FMC Butner will administer a test dose. The test does will include 2mg of haloperidol lactate by intramuscular injection. If the Defendant does not satisfactorily tolerate the 2mg of haloperidol lactate, there will be no administration of haloperidol decanoate 25mg by intramuscular injection every two weeks. If the Defendant does satisfactorily tolerate the 2mg of haloperidol lactate, FMC Butner will proceed to administer haloperidol decanoate 25mg by intramuscular injection every two weeks.

DATED: August 8, 2024

David C. Nye
Chief U.S. District Court Judge